IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DIANA DENISE JORDAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:20-cv-00598-BP |
| | § | |
| ANDREW SAUL, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Diana Denise Jordan ("Jordan") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of Social Security ("Commissioner") of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, administrative record, and applicable legal authorities, the undersigned **AFFIRMS** the Commissioner's decision.

**I.      STATEMENT OF THE CASE**

Jordan was born on March 1, 1961 and has a medical assistant certificate. *See* Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 16-1 at 48, 66. She applied for DIB on September 28, 2017, alleging that her disability began on June 25, 2014. Tr. 18. When she applied, she was fifty-six years old, which is defined as a person of advanced age. Tr. 66. The Commissioner denied her claim initially on January 17, 2018, and upon reconsideration on May 1, 2018. Tr. 18. Jordan requested a hearing, which was held before Administrative Law Judge ("ALJ") Carolyn Keen on April 29, 2019, in Dallas, Texas with Jordan and her attorney present. *Id.* At the hearing Jordan amended her alleged onset date to April 15, 2017. *Id.* The ALJ issued her unfavorable decision on June 3, 2019, finding that Jordan was not disabled. Tr. 31.

Specifically, the ALJ employed the statutory five-step analysis and established during step one that Jordan had not engaged in substantial gainful activity since April 15, 2017, the amended alleged onset date. Tr. 20. At step two, she determined that Jordan had the severe impairments of lumbar degenerative disc disease status-post L4-5 fusion surgery with chronic pain syndrome, cervical degenerative disc disease status-post C5-7 surgery and C4-7 cervical laminectomy and posterior instrumented fusion, major depressive disorder, single episode, severe, and anxiety. *Id.* She found that Jordan had a moderate limitation concentrating, persisting, or maintaining pace. Tr. 25. She also found that Jordan had mild limitations in understanding, remembering, or applying information; interacting with others; and adapting or managing oneself. Tr. 25-26. At step three, the ALJ found that Jordan's impairments did not meet or medically equal two of the "marked" impairments listed in 20 C.F.R. Pt. 404(p). Tr. 25. In particular, she concluded that Jordan retained the residual functional capacity ("RFC")

> to perform sedentary work as defined in 20 CFR 404.1567(a) except she can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. She can frequently balance and can occasionally stoop and crouch but no kneeling and crawling due to history of 2015 L4-L5 fusion and 2017 C4-6 fusion. She should avoid exposure to unprotected heights and no work requiring walking on uneven terrain or slippery surfaces. Mentally, she can tolerate routine workplace changes, sustain attention for up to two-hour blocks of time without requiring redirection to task and time off task can be accommodated by normal breaks. She is not required to maintain a production-rate pace such as found in assembly line work.

Tr. 26. At step four, the ALJ determined that Jordan was capable of performing past relevant work as a collection clerk, so a finding of "not disabled" was appropriate. Tr. 29-30.

The Appeals Council denied review on April 20, 2020. Tr. 7. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II. STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. § 404 (2020). The SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A) (2020); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be engaged in any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)-(b)). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *see Stone v. Heckler*, 752 F.2d 1099, 1100-03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, the impairments must prevent the claimant from returning to past relevant work. *Id.* § 404.1520(a)(4)(iv). Before this step, the ALJ assesses the claimant's RFC, which is "the most [a claimant] can still do despite [the claimant's] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1). Fifth, impairments must prevent the claimant from doing any work after considering the claimant's RFC, age, education, and work experience. *Crowley*, 197 F.3d at 197-98; 20 C.F.R. § 404.1520(a)(4)(v).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing [he or] she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

The Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (internal quotation marks omitted) (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Id.*; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (internal punctuation omitted) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## III. ANALYSIS

Jordan raises two issues on appeal. She claims that the ALJ failed to (1) incorporate any limitations for her psychological impairments after she found them to be a severe impairment, and (2) support her credibility findings with substantial evidence. ECF No. 20 at 16-26.

### A. Substantial Evidence Supports the ALJ's RFC Determination.

Jordan first argues that the ALJ did not incorporate any limitations that are reasonably related to her major depressive disorder and anxiety. *Id.* at 16. She contends that the ALJ acknowledged that her mental limitations significantly impair her ability to perform activities and that the RFC required a more detailed assessment, yet her RFC does not reflect any corresponding limitations. *Id.* Although the ALJ found that Jordan can "tolerate routine workplace changes, sustain attention for up to two-hour blocks of time without requiring redirection to task and time off task can be accommodated by normal breaks" and "is not required to maintain a production-rate pace such as found in assembly line work[,]" Jordan argues that these are not limitations since they have no impact on competitive, remunerative work, but instead are just parts of the definition of competitive work. *Id.* at 17. Additionally, Jordan argues that breaks that have already built into an average workday are not limitations and therefore do not adequately account for her ability to concentrate and stay on task. *Id.* at 18. Jordan contends that the ALJ not only erred in her RFC determination, but that her error was not harmless because "the ALJ would have awarded benefits had she found Jordan incapable of performing her past, skilled work." *Id.* at 19.

In response, the Commissioner agrees that Jordan's mental impairments are severe impairments, but argues that the RFC accommodates her impairments. ECF No. 21 at 2-3. Additionally, he asserts that the objective evidence does not support more "meaningful" limitations as she claims. *Id.* at 3. He contends that during the relevant period, Jordan was receiving regular psychiatric care from Wasiq Zaidi, M.D. ("Dr. Zaidi"), a psychiatrist who regularly found that her symptoms were mild. *Id.* For example, in April and May 2017, Jordan reported that her anxiety and mental state were doing better, and Dr. Zaidi observed that she had a normal mood, no depressive symptoms, and no attentional difficulties, and while her anxiety got worse in

September, October, and November 2017, by the end of November, Jordan reported thar her symptoms were improving with medication. *Id.* at 4. By April 2018, she reported that her anxiety was controlled and managed with her medications, she had no side effects, and her examination revealed no anxiety, no depressive symptoms, and a normal attention span. *Id.* Jordan also had a global assessment of functioning ("GAF") score of 70, indicating that she only displayed minor symptoms. *Id.*

In response to Jordan's argument that the ALJ's error was not harmless because she did not use the Grid Rules, the Commissioner counters that the ALJ was not required to do so since Jordan did not prove disability under the first four prongs of the sequential evaluation process. *Id.* at 6 (citing *Perez v. Heckler*, 777 F.2d 298, 300-301 (5th Cir. 1985)). He also argues that Jordan's claim that the ALJ's hypothetical question to the vocational expert ("VE") was flawed is irrelevant as the ALJ concluded that Jordan could return to her past relevant work and thus the VE's testimony was not necessary. *Id.* at 7 (citing *Williams v. Califano*, 590 F.2d 1332, 1334 (5th Cir. 1979)).

Although Jordan "frames the issue as one of substantial evidence, the Court should consider whether the failure of the ALJ to attribute any specific limitation[s] to [Jordan's] severe [mental] impairment[s] constitutes reversible error." *Sarah B. v. Berryhill*, No. 1:17-cv-0080-BL, 2018 WL 3763837, at *8 (N.D. Tex. June 29, 2018), *rec. adopted*, No. 1:17-cv-080-C-BL, 2018 WL 3756944 (N.D. Tex. Aug. 8, 2018). "Federal courts in Texas have found that when impairments are identified as severe at step two but an RFC does not include any limitations for those impairments, the RFC in effect contradicts the step two finding." *Winston v. Berryhill*, No. 3:16-cv-419-BH, 2017 WL 1196891, at *12 (N.D. Tex. Mar. 31, 2017), *aff'd*, 755 F. App'x 395 (5th Cir. 2017).

However, there is a difference between an assessment of RFC and a step two severity finding, and an ALJ "does not err solely because [she] finds an impairment 'severe' at step two but does not attribute any limitation to that impairment in assessing the claimant's RFC." *Sarah B.*, 2018 WL 3763837, at *8 (citation omitted). The Court has held that "an ALJ did not err in finding severe impairments at step two and not attributing any limitation to those impairments in the RFC assessment" since "the ALJ considered the limitations that were encompassed by the severe impairments or accounted for the limitations in some respect before making a disability finding." *See Campbell v. Berryhill*, No. 3:15-cv-3913-N-BH, 2017 WL 1102797, at *11 (N.D. Tex. Feb. 24, 2017), *rec. adopted*, No. 3:15-cv-3913-N-BH, 2017 WL 1091651 (N.D. Tex. Mar. 23, 2017); *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *9 (5th Cir. Aug. 19, 2005) (per curiam) ("A claimant is not entitled to social security disability benefits merely upon a showing that she has a severe disability. Rather, the disability must make it so the claimant cannot work to entitle the claimant to disability benefits."); *see also Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001) ("The ALJ's finding that [the claimant] had a 'combination of impairments that [were] severe' did not foreclose a finding that [the claimant] had [an RFC] to perform a range of light work, and is not necessarily inconsistent with that finding."); *Quigley v. Astrue*, No. 4:09-cv-402-A, 2010 WL 5557500, at *8 (N.D. Tex. Sept. 8, 2010), *rec. adopted*, 2011 WL 61630 (N.D. Tex. Jan. 5, 2011) (noting that step two and the RFC determination are different inquiries) .

To determine whether an ALJ erred in finding severe impairments at step two and not attributing any limitation to those impairments in the RFC assessment, the Court must decide whether the ALJ considered the limitations that were encompassed by the severe impairments or accounted for the limitations in some respect before making a disability finding. *See, e.g., Gonzalez v. Colvin*, No. 4:12-cv-641-A, 2014 WL 61171, at *6-7 (N.D. Tex. Jan. 6,

2014) (ALJ's decision was not subject to reversal where he did not set forth specific limitations in his RFC determination relating only to the claimant's severe impairment, but found other limitations that took into account the claimant's severe impairment); *Scott v. Colvin*, No. 4:12-cv-01569, 2013 WL 6047555, at *11 (S.D. Tex. Nov. 14, 2013) (ALJ "fully addressed the impact of [the claimant's severe impairment] on her ability to do sustained work activities").

In *Martinez v. Astrue*, this Court held that "[w]ithout some explanation in the record as to how plaintiff can suffer from a severe impairment, ... [without] any limitation on plaintiff's ability to handle objects or pose other manipulative limitations ... the decision cannot stand." No. 2:10-cv-0102, 2011 WL 4128837 (N.D. Tex. Sept. 9, 2011), *rec. adopted*, 2:10-cv-0102, 2011 WL 4336701 (N.D. Tex. Sept. 15, 2011). However, unlike *Martinez*, the ALJ in this case expressly considered Jordan's major depressive disorder and anxiety when assessing her RFC. The ALJ noted that the objective evidence did not support implementing any greater limitations as Jordan's subjective statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible. Tr. 27. The ALJ evaluated Jordan's mental limitations under the criteria of listings 12.04 and 12.06 and determined that the medical evidence did not support listing-level severity. Tr. 25.

The ALJ found that Jordan did not require inpatient psychiatric hospitalization during the relevant time period, required minimal treatment, and had some "bereavement symptoms." Tr. 28. However, her symptoms did not have an impact on her ability to understand, remember, and apply information. *Id.* The ALJ also noted that despite some difficulty coping with her mother's death, Jordan reported that her medications were working, her energy and mood were fine, and she was motivated to get things done. *Id.* In 2018, the observations from her mental examinations were "happy, attentive, speech within normal limits, mild depression, full affect, appropriate thought

content, intact memory, fully oriented, and no signs of anxiety." *Id.* Moreover, Jordan offered no testimony or evidence to explain how her depression and anxiety limit her ability to work. In fact, the ALJ's decision noted that Jordan could go out alone, pay bills, spend time with family members, get along with her boss, prepare simple meals, do household chores, and shop in stores. Tr. 25-26.

Additionally, the Court notes that impairments controlled by medication are not disabling. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988). In *Garcia v. Astrue*, the Fifth Circuit affirmed the district court's finding of no disability where the evidence showed that medication controlled the claimant's depression, headaches, and difficulty concentrating, even though the ALJ determined the claimant's depression and headaches to be severe impairments. 293 F. App'x 243, 245 (5th Cir. 2008).

Here, despite the ALJ's determination that Jordan's depression and anxiety were severe impairments, the medical evidence indicates that Jordan's depression and anxiety have been improving with the medication prescribed by Dr. Zaidi, and Jordan confirmed that that she was doing better and that her mood had been improving with the medication. Tr. 21. Consequently, the ALJ found that the medical evidence does not satisfy the severity required to meet any listed impairments in Appendix 1 as they are controlled by medication and, therefore, her depression and anxiety do not impair her ability to do some physical and mental work activities. Tr. 28. Yet, the ALJ still considered Jordan's subjective complaints and included in her RFC determination that Jordan could tolerate routine workplace changes; sustain attention for up to two-hour blocks of time without requiring redirection to task; that time off tasks could be accommodated by normal breaks; and that she must not be required to maintain a production-rate pace such as found in assembly line work. Tr. 26.

The ALJ's decision sufficiently shows that she considered Jordan's mental impairments in the RFC determination despite not specifically identifying a limitation that was solely attributable to her depression and anxiety. *See Winston*, 2017 WL 1196861, at *14. Therefore, the ALJ did not err in not attributing specific limitations to Jordan's severe impairments. *See id.*

**B.     Substantial Evidence Supports the ALJ's Credibility Finding.**

Jordan argues for reversal because the ALJ did not support her rejection of Jordan's testimony with substantial evidence. ECF No. 20 at 22. Jordan claims that the ALJ incorrectly found that the objective medical findings, medical history, degree of medical treatment required, and her description of her activities of daily living did not support her testimony. *Id.* Jordan alleges that the ALJ "relied more on instinct than on evidence," and denied her benefits on a "hunch" rather than substantial evidence. *Id.* at 25.

The Commissioner claims that the ALJ properly found that Jordan's statements concerning the intensity, persistence, and limiting effects of her symptoms were not consistent with the objective medical and other evidence. ECF No. 21 at 8. The Commissioner argues that rather than picking and choosing only the evidence that did not support a claim for disability as Jordan urges, the ALJ properly discredited Jordan's subjective complaints because they contradicted her medical reports and description of her daily activities. *Id.* at 9. The Commissioner argues that the evaluation of Jordan's credibility is the sole responsibility of the ALJ, and the ALJ must incorporate only the limitations that she found consistent with the record. *Id.* at 9-10.

By definition, a claimant's RFC is the most the claimant can still do despite the claimant's impairments and any related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2020). The ALJ is not required to expressly state in the RFC the limitations on which it is based. *Cornejo v. Colvin*, No. EP-11-cv-470-RFC, 2013 WL 2539710, at *9 (W.D. Tex. June 7, 2013) (citing

10

*Bordelon v. Astrue*, 281 F. App'x 418, 422-23 (5th Cir. 2008) (per curiam)). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996). The functions in paragraphs (b), (c), and (d) relate to physical, mental, and other abilities. The ALJ considers the nature and extent of the claimant's physical, mental, and other relevant limitations. 20 C.F.R. § 416.945.

In determining a claimant's physical limitations, the ALJ considers evidence of the claimant's abilities to sit, stand, walk, lift, carry, push, pull, and perform other physical functions. *Id.* at § 416.945(b). In determining the claimant's mental limitations, the ALJ considers evidence of the claimant's abilities to understand, remember, and carry out instructions, as well as respond appropriately to supervision, co-workers, and work pressures in a work setting. *Id.* at § 416.945(c). The ALJ uses what is known as the "paragraph B criteria" to rate the degree of the claimant's mental limitations in four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* at § 416.920a; *see id.* Part 404, Subpart P, Appendix 1. Finally, the ALJ considers limitations and restrictions that affect other work-related abilities. 20 C.F.R. § 416.945(d).

When the claimant alleges subjective complaints of pain, objective evidence must corroborate these allegations. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). Pursuant to SSR 96-7p, an ALJ assessing a claimant's allegations of symptoms such as pain or fatigue must conduct an objective-subjective, two-step analysis. *Salgado v. Astrue*, 271 F. App'x 456, 458 (5th Cir. 2008). In the first, objective, step, the ALJ must determine whether there is an impairment that could reasonably be expected to produce the claimant's symptoms. *Id.* If the ALJ identifies an

impairment at step one, then the ALJ proceeds to the second, subjective, step and "considers the applicant's statements about symptoms and the remaining evidence in the record to determine the strength of the symptoms and how the symptoms affect the applicant's ability to do basic work." *Id.* at 459. This requires a credibility finding regarding the applicant's claims about symptoms. *Id.*

Further, "[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled." *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983). The ALJ's "evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa*, 895 F.2d at 1024.

While Jordan testified to the level of pain and limitations her chronic neck and back conditions cause, she did not support her subjective complaints with objective medical evidence in the record that her chronic pain limits her ability to perform sedentary work. The ALJ identified the proper legal standards, stated the parameters of the objective-subjective, two-step analysis she was required to undertake, and proceeded in compliance with the proper legal standards. Tr. 26-29. After considering the evidence, the ALJ determined that Jordan's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms at step one. Tr. 27. However, after considering Jordan's complaints resulting from chronic neck and back pain, the ALJ found that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible. Tr. 27. Nevertheless, the ALJ still considered Jordan's allegations of neck and back pain which prevented her from sitting for thirty minutes at a time, and determined that she retained the ability to perform sedentary work with minor postural and manipulative limitations such as no climbing ladders, ropes, or scaffolds as well as no kneeling and crawling due to a history of her history of low back and neck surgery. Tr. 26.

Substantial evidence in the record supports the ALJ's determination that Jordan could perform sedentary work on a sustained basis. The ALJ evaluated Jordan's claims of "extreme pain" and drowsiness and noted her claims of chronic neck and back pain in her earlier doctor visits. Tr. 28. The ALJ found that in more recent doctor's appointments, Jordan was "independent in ambulation and activities of daily living." Tr. 28. Also, the medical record showed that her pain medications were controlling her pain, and her shoulder exams were within normal limits. *Id.* Likewise, the ALJ found the opinions of State Agency Consultants Amita Hedge, M.D. ("Dr. Hedge"), and James Wright ("Dr. Wright") persuasive. Those consultants both opined that Jordan could "lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 4 hours [total/combined] in an 8 hour workday due to cervical and lumbar condition [post-surgical] and sit about 6 hours in an 8 hour workday …." Tr. 29. The ALJ also considered that Jordan's impairments improved with conservative treatment such as physical therapy, injections, and medication. Tr. 27. Noting these improvements, the ALJ determined that Jordan's limitations due to her chronic neck and back pain were not as severe as she alleged. Tr. 21.

Jordan's argument that the ALJ improperly considered evidence of her daily activities that was inconsistent with her testimony is not persuasive. The Fifth Circuit has held that it is appropriate for the ALJ to consider the claimant's daily activities when determining the disability status. *Reyes v. Sullivan,* 915 F.2d 151, 155 (5th Cir. 1990) (per curiam) (the ALJ can consider evidence of daily activities in conjunction with other evidence). Therefore, the ALJ did not err in considering evidence of Jordan's daily activities in arriving at the disability status.

Jordan has not shown that the ALJ's RFC finding is not based on credible evidentiary choices or medical findings. Instead, she argues that other evidence in the record shows that she is not capable of the demands of her previous work as a collection clerk. *See* ECF No. 20 at 16.

Jordan's "burden is not to highlight evidence contrary to the ALJ's ruling, but to show that there is no substantial evidence supporting the ALJ's decision." *Caldwell v. Colvin*, No. 4:15-cv-00576-O-BL, 2016 WL 3621097, at *3 (N.D. Tex. June 10, 2016), *rec. adopted,* No. 4:15-cv-00576-O, 2016 WL 3523780 (N.D. Tex. June 28, 2016). Jordan's disagreement with the ALJ's RFC finding does not carry her burden of establishing that no substantial evidence supports the ALJ's determination. As a result, reversal of the ALJ's decision is not required on this point.

## IV. CONCLUSION

Because the ALJ employed the correct legal standards, substantial evidence in the record supports her decision, and Plaintiff has not shown that reversal of the decision is required, the Commissioner's decision is **AFFIRMED.**

It is so **ORDERED** on June 3, 2021.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE